The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| THE POKÉMON COMPANY INTERNATIONAL, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>RAGEON, INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:15-cv-01265-RSL<br><br>**DEFENDANT RAGEON, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(6)**<br><br>NOTE ON MOTION CALENDAR: October 9, 2015<br><br>ORAL ARGUMENT REQUESTED |

DEF.'S RULE 12(b)(6) MOT. TO DIS. - i
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

## Table of Contents

I. INTRODUCTION .................................................................................... 1

II. FACTUAL BACKGROUND AND ALLEGATIONS IN COMPLAINT ........ 3

III. ARGUMENT ........................................................................................... 6

    A. Legal standard ................................................................................ 6

    B. RageOn's copying constitutes fair use and is thus not actionable ........... 7

    C. The Pokémon Company's delay in registering and enforcing its copyrights rebuts the presumption of the validity of its registered copyrights ........................................................................................ 10

IV. CONCLUSION ...................................................................................... 13

DEF.'S RULE 12(b)(6) MOT. TO DIS. - ii
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

# Table of Authorities

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 554 (2007) ............................................................................................. 6

*Branch v. Tunnell*,
 14 F.3d 449 (9th Cir. 1994) .................................................................................. 7

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994) ...................................................................................... 7, 8, 9

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.*,
 614 F.3d 335 (7th Cir. 2010) ................................................................................ 2

*Folio Impressions, Inc. v. Byer California*,
 937 F.2d 759 (2d Cir. 1991) ............................................................................... 10

*Ileto v. Glock*,
 49 F.3d 1191 (9th Cir. 2003) ................................................................................ 6

*Leadsinger, Inc. v. BMG Music Publ'g*,
 512 F.3d 522 (9th Cir. 2008) ............................................................................ 8, 9

*Mattel, Inc. v. Walking Mountain Prods.*,
 353 F.3d 792 (9th Cir. 2003) ..................................................................... 8, 9, 10

*Papasan v. Allain*,
 478 U.S. 265 (1986) ............................................................................................. 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984) ............................................................................................. 7

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) .............................................................................. 7

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) .............................................................................. 7

*Thimbleberries, Inc. v. C & F Enters.*,
 142 F. Supp. 2d 1132 (D. Minn. 2001) ............................................................... 10

DEF.'S RULE 12(b)(6) MOT. TO DIS. - iii
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

**Statutes**

17 U.S.C. § 107 ............................................................................................................... 7, 8

17 U.S.C. § 410(c) ............................................................................................................ 10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 6

Fed. R. Civ. P. 8(a)(2) ........................................................................................................ 6

U.S. Const. amend. I .......................................................................................................... 6

DEF.'S RULE 12(b)(6) MOT. TO DIS. - iv
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

## I. INTRODUCTION

The Pokémon Company International has singled out RageOn—a young startup company that sells irreverent t-shirts out of a tiny office in Ohio—to send a public message to all artists who create parodic works of its copyrighted images. The Pokémon Company has not done this because RageOn's t-shirts actually violate the Copyright Act; It simply finds the t-shirts distasteful (and/or lacks a sense of humor). This is not the first time the Pokémon Company has used the Copyright Act to stifle parody[1]; no part of the applicable copyright laws justifies the Pokémon Company's vindictive conduct. It is also hypocritical for the Pokémon Company—having made *billions* of dollars selling cartoon characters through Walmart and others *every* year—to seek to bury other cartoonists who creatively parody those who came before them.

The brief history of this case already illustrates the Pokémon Company's pretextual and heavy-handed attempt to squeeze RageOn, a small startup that sells T-shirts and other products on an online website[2] run by a handful of young entrepreneurs (average age: 25). Rather than sending a demand letter or engaging in any sort of discussion before filing suit—what virtually any responsible company would do—the Pokémon Company brought this case against RageOn without any prior notice. (Declaration of Jonathan Shapiro in Support of Defendant RageOn's Motion to Dismiss ("Shapiro Decl."), ¶ 4.) Nor did the Pokémon Company make even the most minimal effort to resolve its grievance without reflexively starting a federal court food fight. (*Id.*) Faced with the *in terrorem* threat of a preliminary injunction that RageOn knew it could defeat in a fair court fight—but could not afford without missing payroll—RageOn voluntarily and immediately stopped selling its legitimate, lawful products, *i.e.*, RageOn actually gave the Pokémon Company what it said it wanted (no more legitimate parody t-

---

[1] Indeed, just last month the Pokémon Company's legal team launched a thematically similar federal court assault against Pokémon fans who were hosting a party at a local bar – charging $2 at the door (and losing money in the process). http://arstechnica.com/tech-policy/2015/09/pokemon-party-organizer-weve-got-no-money-and-were-sued-without-warning/.

[2] www.RageOn.com

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 1
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

shirts). (*Id.* ¶ 3.) But that is not enough for the Pokémon Company. It now wants full public capitulation as if a lawful parody Pokémon shirt (say, a marijuana-smoking Pokémon) were a grievous crime. It apparently expects RageOn to confess liability (when it did nothing wrong) or otherwise grovel before it will entertain any discussion of settlement.[3]

RageOn will not confess. It did nothing wrong. The lawsuit is specious, plainly brought for an improper purpose.

For starters, the Pokémon Company's delay in registering and enforcing the copyrighted Pokémon images at issue gives the game away. Although the Complaint repeatedly states that its characters made their "first debut" in the 1990s, the copyright registrations listed in Exhibit A of the Complaint were not filed until 2010 at the earliest, with most registered in 2012 or later. The Pokémon Company plainly can afford whatever lawyers it needs. That it did not even bother to register for *decades* puts it in a particularly poor legal position to pretend it is a victim.

Further, the inequitable and pretextual nature of this case is apparent from the undisputable fact (illustrated by a simple Google search) that there are *hundreds* of other online merchants that continue to sell clothing and other items emblazoned with Pokémon images, seemingly without licensing, that Plaintiff has chosen not to target with lawsuits. For example, a search for "Pokémon" on www.etsy.com, an online marketplace through which individuals can sell items that they make or curate, elicits nearly 30,000 results for handmade clothing, jewelry, art, collectibles, accessories, toys, and games based upon or inspired by the Pokémon Company's copyrighted images. It is obvious that the Pokémon Company only came out of the woodwork and decided to enforce its

---

[3] It may be that the Pokémon Company is not legally obligated to try to resolve anything in a businesslike manner; perhaps it views federal court lawsuits – lawyers, depositions, objections and "for the record" email, etc. – as an intelligent and socially useful way to get whatever it wants. But RageOn has equitable defenses to a lawsuit that it believes was brought for an improper purpose, and if this case proceeds, the conduct of the Pokémon Company (before and after it started suing) is plainly relevant. *See, e.g.*, *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335, 339-40 (7th Cir. 2010) (affirming award of attorneys' fees to a prevailing defendant in copyright infringement action due to plaintiff's vexatious conduct in multiplying the proceedings).

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 2
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

belatedly-filed copyrighted works against RageOn because it does not like its parodies of Pokémon. This is corporate censorship.

Finally, as a matter of law, RageOn's t-shirts are such obvious parodies that the Court should dismiss the case (and liberate the t-shirts) as lawful fair use. The marijuana parody and the Hassidic Rabbi parody, for example, are so clearly socially and politically-relevant commentary that the law protects – even if some might be as offended as others might be amused. That the Pokémon Company does not even allege that it ever lost a penny in sales to or because of RageOn, nor that anyone on the planet thought that there was an "official" Pokémon rabbi, confirms that this case is all about corporate censorship (and not any legitimate threat to intellectual property).

Because RageOn's works constitute fair use and because the Pokémon Company has demonstrated undue delay in registering and enforcing its copyrighted works, its Complaint should be dismissed.

II. **FACTUAL BACKGROUND AND ALLEGATIONS IN COMPLAINT**

RageOn is a small startup with an energetic culture and headquartered in Cleveland, Ohio. It currently has 19 employees who work out of an office the size of a modest two-bedroom apartment. No one is older than 36 years old, and the average age of RageOn's employees is 25. Despite its lack of resources, however, RageOn is in the early and exciting stage of building a highly relevant business that its customers love, and has put its limited resources towards doing good, such as paying all of its interns and providing thousands of dollars' worth of products to charitable causes such as autism.[4] RageOn was recently nominated for "Best Emerging Startup" in Cleveland, and gives independent artists and brands from all over the world a chance to upload their creations and original art, and the terms of service state that all artists must own the copyright to whatever they are uploading to the website.[5] 99% of RageOn's products are "made to

---

[4] http://www.rageon.com/blogs/news/25666884-a-culture-of-awesomeness.

[5] http://www.rageon.com/pages/rageon-app-terms-of-service

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 3
2:15-cv-01265-RSL
NEWMAN DU WORS LLP

NEWMAN DU WORS LLP
2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

order" in a 100% green manner. Approximately half of RageOn's products are made in the United States, with nearly the entire remainder made in Europe. (None are sold through Walmart or channels that employ people at wages that qualify employees for food stamps.)

By contrast, The Pokémon Company International is a corporate behemoth. Its domestic sales of Pokémon merchandise exceeded *six million dollars* in 2014 alone (Compl. ¶ 11), and its sale of all products exceeds *two billion dollars* annually.[6] Its products have been challenged as anti-Semitic due to their depiction of symbols that bear a striking resemblance to swastikas[7], and at least one episode of a Pokémon cartoon induced seizures in children.[8]

On August 11, 2015, the Pokémon Company filed the Complaint in this case. As noted, it never made any effort whatsoever to discuss the dispute with RageOn so that the parties could avoid litigation in federal court.[9] (Shapiro Decl. ¶ 4.) Faced with the threat of an immediate and crushing legal bill to defend a preliminary injunction, RageOn immediately caved to the Pokémon Company's request that it remove all Pokémon parody items from its online store (*id.* ¶ 3)—even though it so clearly has a constitutional and statutory right to sell t-shirts that make fun of the Pokémon Company and its products.

In the Complaint, the Pokémon Company alleges that RageOn directly infringed its copyrighted Pokémon images by using these images on products sold in RageOn's online marketplace. (*E.g.*, Compl. ¶¶ 40-42, 44, 46.) The Pokémon Company also

---

[6] http://nintendoenthusiast.com/news/pokemon-company-reports-2-billion-in-retail-sales-for-2015/

[7] http://www.cbsnews.com/news/Pokémon-symbol-a-swastika/

[8] http://www.nytimes.com/1997/12/18/world/tv-cartoon-s-flashes-send-700-japanese-into-seizures.html

[9] The unwillingness to even discuss business problems before running to court also appears to be the Pokémon Company's modus operandi. Earlier this month, the Pokémon Company filed a federal lawsuit regarding a Pokémon-themed party at Seattle's PAX Prime gaming conference. *See* http://arstechnica.com/tech-policy/2015/09/pokemon-party-organizer-weve-got-no-money-and-were-sued-without-warning/. Ramar Jones, the organizer of the party, stated "Unfortunately, there was never a letter, a cease-and-desist or anything. We would have stopped it." *Id.* Mr. Jones did cancel the party and refunded all 200 partygoers (for a total $400) for an event on which Mr. Jones loses money each year. And as here, that still is not enough for the vindictive Pokémon Company that continues to press its lawsuit for no legitimate business purpose.

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 4
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

NEWMAN DU WORS LLP

provided photographic examples of some of RageOn's products. (*Id.* ¶ 41, pp. 12-16.)

These are clearly parodies and social commentary, such as Pokémon who smoke marijuana:

 

RageOn's Pokémon t-shirts also provide social commentary about the damaging effects of Pokémon video game addiction (itself well-documented) on youth, with pedo-Pokémon:



DEF.'S RULE 12(b)(6) MOT. TO DIS. - 5
2:15-cv-01265-RSL

Newman Du Wors LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

Newman Du Wors LLP

*Nowhere* in the Complaint does the Pokémon Company ever allege that anyone on the planet has confused the above products with anything that the Pokémon Company International sells. Nor has the Pokémon Company claimed to have lost a penny of sales because of these parody t-shirts (regardless of whether one finds them funny, which some people plainly do, or finds them offensive, which no doubt others do).

If this case is not dismissed, the evidence will show that instead of achieving any legitimate goal, the Pokémon Company has selected RageOn as an easy target to send a message that it enjoys eye-popping profits from its high-profile characters, but will tolerate no parody, humor, or criticism that invariably comes with being so profitably high-profile. It embraces the United States consumer market, but is offended by fair use protections under the Copyright Act and by constitutional protections under the First Amendment. That conduct has continued since the filing. Indeed, the Pokémon Company is not simply a litigation bully, it is proudly so.

### III. ARGUMENT

#### A. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim brought under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Ileto v. Glock*, 49 F.3d 1191, 1199-1200 (9th Cir. 2003).

Although a court must accept all well-pleaded factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), the court need not give any weight to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 6
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, --- U.S. ---, 132 S. Ct. 2101 (2012).

Moreover, when ruling on a motion to dismiss, a court may disregard those assertions in the complaint that are contradicted by facts found in the documents attached to or specifically referenced in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").

**B.     RageOn's copying constitutes fair use and is thus not actionable**

The Copyright Act does not grant a copyright holder exclusive rights to reproduce his or her work. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432-33 (1984). Section 107 of the Copyright Act explains that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994). "The fair use doctrine thus 'permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Id.* at 577 (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)) (alteration in original).) "[P]arodies almost invariably copy publicly known, expressive works." *Id.* at 586.

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 7
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

In determining whether the use of a copyrighted work is fair use, courts consider:

1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

2) The nature of the copyrighted work;

3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4) The effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. When conducting a fair use analysis, courts are not restricted to these factors; "rather, the analysis is a flexible one that [courts] perform on a case-by- basis." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 529 (9th Cir. 2008); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)). Courts also weigh these factors together in light of the Copyright Act's purpose "to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799-800 (9th Cir. 2003). For example, courts have looked to whether use of a copyrighted work is "transformative." *See id.* at 800 (explaining that an analysis of "the purpose and character of use" asks to what extent the new work transforms, rather than simply supplants, the original work, and stating that "a work must add 'something new, with a further purpose or different character, altering the first with new expression, meaning, or message'") (quoting *Campbell*, 510 U.S. at 579). It is not dispositive whether the fair use is disparaging of the original copyrighted work. *See, e.g., id.* at 796, 806 (upholding summary judgment ruling that parodic photographs of nude Barbie dolls in sexualized and violent positions as fair use under the Copyright Act).

Fair use may be considered on a Rule 12(b)(6) motion to dismiss, "which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment when no material

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 8
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

facts are in dispute." *Leadsinger*, 512 F.3d at 530. Thus, although fair use presents "a mixed question of law and fact," *Mattel*, 353 F.3d at 799, where there are no material facts in dispute but rather a question of what these facts mean as a matter of law, dismissal by way of a Rule 12(b)(6) motion is appropriate. For purposes of this Motion only, RageOn is still entitled to dismissal as a matter of law even if one were to assume, in a light most favorable to the Pokémon Company, that there is no material issue of fact: RageOn used the Pokémon Company's copyrighted images in its products. The only question before the Court is the legal implication of RageOn's alleged use of these images, *i.e.*, whether RageOn's copying was fair use.

RageOn's use of Pokémon images is clearly transformative fair use. As the Pokémon Company states in its Complaint, RageOn depicts Pokémon characters "in ways that TPCi would never do itself," such as "associating Pokémon characters with drug use"; "showing Pokémon characters being chased by Pedobear, a popular internet meme" and "depicting Pikachu as a Hasidic Jew surrounded by bundles of money and renaming the character 'Pikajew.'" (Compl. ¶ 40; *See also id.* ¶ 41, pp.12-16 (providing samples of RageOn products use of Pokémon images).[10]) Further, RageOn's use is clearly a transformative parody of Plaintiff's copyrighted works because it adds a "new expression, meaning, or message." *Campbell*, 510 U.S. at 579.

Indeed, RageOn's parody t-shirts are particularly worthy of protection because they are so overtly tied to current political and social controversies in America – the dramatic trend of marijuana legalization (including in this judicial district), the sad and scary irony of seemingly trusted public figures being accused of misconduct with minors (most recently, Jared from Subway and the Duggar family), and the pervasive stereotypes that have burdened Jews (including the relationship with the banking community).[11] In

---

[10] These sample images may properly be considered at the motion to dismiss stage. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (stating "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned."). Of course here, the Pokémon Company itself has included RageOn's images in the Complaint.

[11] The Pokémon Company cannot dispute the criticality of public debate and that creative works can be interpreted differently by different people based on their social and cultural backgrounds. For example, the Pokémon Company was exposed by the Anti-Defamation League of promoting products with

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 9
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

this respect, RageOn's parodic t-shirts are at least as worthy of protection for "fair use" as the supposedly "offensive" depiction in *Mattel* of Barbie (in naked, violent, and hyper sexualized positions), that, as a matter of law, could not justify any liability under the Copyright Act. *See Mattel*, 353 F.3d at 796, 806 (upholding summary judgment ruling that parodic photographs of nude Barbie dolls in sexualized and violent positions as fair use under the Copyright Act).

Because RageOn's products constitute fair use of the Pokémon Company's copyrighted works, the Complaint should be dismissed.

### C. The Pokémon Company's delay in registering and enforcing its copyrights rebuts the presumption of the validity of its registered copyrights

Although a certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright, 17 U.S.C. § 410(c), this presumption may be rebutted. *E.g.*, *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991). For example, one means of rebutting the presumption of validity is to demonstrate that the copyright holder delayed in obtaining a certificate of registration after initial publication of the work. *Thimbleberries, Inc. v. C & F Enters.*, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001).

Here, it is clear from the copyright registration information in the exhibit to the Complaint that the Pokémon Company unduly delayed in seeking copyright protection for images that it first used in the late 1990s. In its Complaint, the Pokémon Company states that characters such as Bulbasaur (Compl. ¶ 19), Snorlax (*id.* ¶ 21), Squirtle (*id.* ¶ 23), Charmander (*id.* ¶ 25), Eevee (*id.* ¶ 27), Gengar (*id.* ¶ 29), Slowpoke (*id.* ¶ 31), and Jigglypuff (*id.* ¶ 33) first appeared on trading cards in the late 1990s, with characters such as Eevee, Gengar, Slowpoke, and Jigglypuff also appearing on consumer goods in the late 1990s and early 2000s. (*E.g.*, *id.* ¶¶ 27, 29, 31, 33.) In Exhibit A to the Complaint,

---

swastikas, and then defended its conduct on the grounds that, just like those who appreciated RageOn's parodies, many are not offended because the swastika products were designed for customers in Japan, where we are told that the symbol in question means good fortune. *See, e.g.*, http://www.cbsnews.com/news/Pokémon-symbol-a-swastika/.

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 10
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

the Pokémon Company attached a list of its "copyright registrations in some of these trading cards." (*Id.* ¶ 9, Exh. A.) An examination of the publicly-available registrations listed in Exhibit A, however, indicates that the earliest copyright registration date for these trading cards was August 23, 2010, with over half of the registrations occurring in 2012 or later[12]:

| Copyright Registration No. | Character | Date of Creation | Date of Publication | Date of Registration |
|---|---|---|---|---|
| VA0001821217 | Pikachu | 2011 | 9/15/2011 | 1/26/2012 |
| VA0001908607 | Pikachu | 2012 | 4/15/2012 | 11/2/2012 |
| VA0001907632 | Charizard | 2012 | 7/15/2012 | 11/2/2012 |
| VA0001938982 | Charizard | 2013 | 7/13/2013 | 10/23/2013 |
| VA0001917301 | Bulbasaur | 2011 | 12/15/2011 | 4/17/2012 |
| VA0001908694 | Snorlax | 2012 | 4/15/2012 | 11/2/2012 |
| VA0001914336 | Snorlax | 2012 | 9/15/2012 | 1/16/2013 |
| VA0001907954 | Squirtle | 2012 | 7/15/2012 | 11/2/2012 |
| VA0001943062 | Squirtle | 2013 | 3/15/2013 | 10/23/2013 |
| VA0001907710 | Charmander | 2012 | 7/15/2012 | 11/2/2012 |
| VA0001940161 | Charmander | 2013 | 7/13/2013 | 10/23/2013 |
| VA0001736199 | Eevee | 2010 | 8/1/2010 | 8/23/2010 |
| VA0001917164 | Eevee | 2011 | 10/15/2011 | 4/17/2012 |
| VA0001755592 | Gengar | 2010 | 10/14/2010 | 12/23/2010 |
| VA0001917500 | Slowpoke | 2011 | 12/15/2011 | 4/17/2012 |
| VA0001820724 | Jigglypuff | 2011 | 9/15/2011 | 1/26/2012 |
| VA0001736210 | Pikachu | 2010 | 8/1/2010 | 8/23/2010 |
| VA0001736184 | Flareon | 2010 | 8/1/2010 | 8/23/2010 |
| VA0001736180 | Jolteon | 2010 | 8/1/2010 | 8/23/2010 |
| VA0001736272 | Vaporeon | 2010 | 8/1/2010 | 8/23/2010 |

---

[12] Further, the earliest dates of creation and dates of publication listed for these works is 2010 (*e.g.*, Copyright Registration Titles VA0001736199 [Eevee], VA000175592 [Gengar], VA0001736210 [Pikachu], VA0001736180 [Jolteon], and VA0001736272 [Vaporeon]), indicating that either the Pokémon Company's assertion that these images first appeared in the 1990s was untrue, or that the Pokémon Company provided incorrect dates of creation and publication to the U.S. Copyright Office in order to avoid scrutiny of its more than decade-long delay in seeking copyright registration of these works.

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 11
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

Additionally, the Pokémon Company appears to have selectively chosen RageOn as a litigation target despite the fact that literally hundreds of other websites also sell products bearing the Pokémon Company's copyrighted Pokémon works. The following are just a fraction of websites that sell clothing and other products "inspired by" the Pokémon Company's copyrighted Pokémon works, seemingly without a license from the Pokémon Company to do so, and that the Pokémon Company apparently has not sued for copyright infringement:

**Etsy** (https://www.etsy.com/)
**TShirtonomy** (http://tshirtonomy.com/)
**Redbubble** (http://www.redbubble.com/)
**Something Geeky** (http://somethinggeeky.com/)
**JammyMunkey** (http://jammymunkey.com/)
**AliExpress** (http://www.aliexpress.com/)
**Amazon.com** (http://www.amazon.com/s/?url=search-alias%3Daps&field-keywords=pokemon+shirt)
**Society6** (https://society6.com/)
**Shelfies** (http://www.shelfies.com/search?q=pokemon)
**Beloved** (http://www.belovedshirts.com/products/gotta-catchm-all-sweatshirt)
**Print All Over Me** (https://paom.com/products/?type=search&q=pokemon)
**iEDM** (http://iedm.com/search?type=product&q=pokemon)
**On Cue Apparel** (http://oncueapparel.com/search?q=pokemon)
**Shop Jeen** (http://www.shopjeen.com/search?&q=pokemon)
**Live Heroes** (https://liveheroes.com/en/product/show/16293)

Further, the popular and long-running television program "The Simpsons" has parodied Pokémon numerous times, seemingly without any legal ramifications. *E.g.*, Season 10, Episode 226, "Thirty Minutes Over Tokyo" (Bart watches a cartoon called "Battling Seizure Robots" which gives viewers seizures, which is a reference to the Pokémon episode "Computer Warrior Porygon" which gave children seizures in 1997); Season 14, Episode 294, "Bart vs. Lisa vs. the Third Grade" (while Bart is taking a test, he has a vision that everyone in his class is a television character and one classmate is

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 12
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

turned into Pikachu); Season 15, Episode 320, "Tis the Fifteenth Season" (during the opening couch gag, every Simpson family member is a Japanese television character and Maggie is Pikachu); Season 26, Episode 556, "Treehouse of Horror XXV" (one of the variations of the Simpson family is based on character designs in Japanese anime and manga, and Maggie is drawn with Pikachu's features).

At this point, the Pokémon Company's images appear to be so abundantly utilized without a license that they can nearly be considered public domain. Indeed, Plaintiff's selective prosecution against a truly nascent online retailer that immediately (and as a matter of law, completely unnecessarily) agreed to stop making fun of the monolithic Pokémon, itself makes clear what is going on. That just last month this same Plaintiff filed similarly abusive litigation against a fan who so clearly could not afford to litigate—and still persists with a federal court lawsuit against that fan even after he so publicly capitulated under economic duress—confirms the Pokémon Company's copyright claims are (politely) pretextual. Due to the Pokémon Company's failure to timely register the copyrighted works and due to their continued allowance of unlicensed use of these works, the Pokémon Company should not be able to enforce its copyrights against RageOn in this action.

## IV. CONCLUSION

For the foregoing reasons, Defendant RageOn respectfully requests that the Court dismiss The Pokémon Company International's Complaint in its entirety.

Dated: September 14, 2015

Respectfully Submitted,

NEWMAN DU WORS LLP

s/ Derek Linke
Derek Linke, WSBA No. 38314
*linke@newmanlaw.com*
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
Telephone: (206) 274-2800
Facsimile: (206) 274-2801

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 13
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

Leeor Neta (*pro hac vice* to be filed)
*leeor@newmanlaw.com*
NEWMAN DU WORS LLP
1900 Powell Street, Sixth Floor
Emeryville, California 94608
Telephone: (415) 944-5422
Facsimile: (415) 944-5423

Jonathan Shapiro (*pro hac vice* to be filed)
*jashapiro@mintz.com*
Dominique Windberg (*pro hac vice* to be filed)
*dlwindberg@mintz.com*
MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY, AND POPEO
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: (415) 432-6000
Facsimile: (415) 432-6001

Attorneys for Defendant RageOn, Inc.

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 14
2:15-cv-01265-RSL

NEWMAN DU WORS LLP

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800

## Certificate of Service

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this the 14th day of September 2015. Any other counsel of record will be served with a true and correct copy of the foregoing by mail or facsimile.

s/ Derek Linke
Derek Linke

DEF.'S RULE 12(b)(6) MOT. TO DIS. - 15
2:15-cv-01265-RSL

**NEWMAN DU WORS LLP**

2101 Fourth Ave., Suite 1500
Seattle, Washington 98121
(206) 274-2800